## PURCHASE AND SALE AGREEMENT



THIS PURCHASE AND SALE AGREEMENT (hereinafter sometimes referred to as the "Agreement") is hereby made and entered into as of the Effective Date (as hereinafter defined) by and between GOFF GROUP, INC., an Alabama corporation (hereinafter sometimes referred to as the "Seller") and JOHN W. GOFF, (hereinafter sometimes referred to as the "Purchaser").

### WITNESSETH THAT:

WHEREAS, Seller owns 80 Technacenter Drive also known as Lot 1-A of the Technacenter Plat as the same is more fully described on Exhibit "A" (hereinafter referred to as the "Property");

WHEREAS, Seller owes a first mortgage loan to StanCorp, and a number of other loans secured by the Property as shown on the following table:

| CREDITOR POSITION | CREDITOR | APPROXIMATE AMOUNT |
|---|---|---|
| First Mortgage | Stancorp Mortgage | $ 1,787,594.46 |
| Second Mortgage | Community Bank | $ 391,416.99 |
| Third Mortgage | Dooley Culbertson | $ 200,000.00 |
| Fourth Mortgage | SouthTrust Bank | $ 71,000.00 |
| Fifth Mortgage | Art Leadingham | $ 75,000.00 |
| Sixth Mortgage | Tommy Gallion | $ 75,000.00 |
| Seventh Mortgage | Bobby Bowick | $ 69,575.50 |
| Eighth Mortgage | Jody Duncan | $ 118,000.00 |
| TOTAL | | $ 2,787,586.95 |

; and

WHEREAS, the following are costs associated with a third party sale which would have to be paid at the closing of an outright sale to a party other than Purchaser:

| FACTOR | APPROXIMATE COST |
|---|---|
| First Mortgage Prepayment Penalty | $245,000 |
| 6-10% Real Estate Commission | $180,000 to $300,000 |
| TOTAL | $425,000 to $545,000 |

; and



WHEREAS, there is deferred maintenance on the building of $200,000 to $300,000 which is a factor is assessing the value of the building and has the effect of de-valuing the bottom line of the appraised value of the building; and

WHEREAS, the current appraised value of the property is in the range of $3,200,000 to $3,400,000 without consideration of sales commission, the prepayment penalty or deferred maintenance; and

WHEREAS, John W. Goff has already loaned to Goff Group, Inc. $90,000 by paying that sum on behalf of Goff Group, Inc. in order to reinstate the first mortgage with StanCorp; and

WHEREAS, the assumption by John W. Goff of all of the liabilities on the Property plus credit for the $90,000 reinstatement payment and a $1000 binder results in an assumption price of approximately $2,878,586.95;

WHEREAS, an assumption price of $2,878,586.95 paid by John W. Goff is equivalent to a free and clear sale through a realtor to any other party in the price range of $3,303,586.95 to $3,423,586.95 because of the absence of the aforementioned prepayment penalty and real estate commission; and

WHEREAS, Seller desires to sell and Purchaser desires to purchase, upon the terms and conditions hereinafter set forth, the Property, together with (a) all right, title and interest of Seller in and to any and all improvements situated upon the Property, (b) all rights, easements, licenses, privileges and appurtenances pertaining thereto, and (c) all trees, bushes, landscaping and foliage thereon with said sale and purchase being subject only to the Permitted Title Exceptions as defined in Paragraph 5 hereof.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are all hereby acknowledged by each of the parties hereto, the parties hereto agree as follows:

1. **Purchase and Sale; Purchase Price and Method of Payment**. At the Closing on the Closing Date (as hereinafter defined), and upon all of the terms and subject to all of the conditions of this Agreement, Seller shall sell, assign, convey, transfer and deliver to Purchaser, and Purchaser shall purchase and take possession of, the Property. The purchase price for the Property shall be approximately TWO MILLION EIGHT HUNDRED EIGHTY-SEVEN THOUSAND FIVE HUNDRED EIGHTY-SIX and 95/100 Dollars ($2,887,586.95) (hereinafter sometimes referred to as the "Purchase Price"). The Purchase Price shall be adjusted as set forth in this Agreement and shall be paid by Purchaser to Seller at Closing in the manner set forth herein.

A. **Reinstatement Payment.** Purchaser shall receive a credit against the Purchase Price for $90,000.00 representing a reinstatement payment paid on December 1, 2005 which payment was funded by a loan obtained by purchaser from Dooley Culbertson and Bobby Bowick.

B. **Assumption of Existing Loans.** Purchaser shall assume Seller's existing mortgage loans listed above and receive a credit against the Purchase Price in the amount of $2,787,586.95.

C. **Binder/Assumption Fee.** The Seller has agreed to pay the Assumption Fee in Paragraph 2 below. Purchaser herewith tenders to Seller $1000.00 as an earnest money binder which Seller shall in turn use to pay the Assumption Fee. Said binder shall be credited to the Purchase Price at closing.

D. **Cash to Seller at Closing.** At Closing, no cash is to be paid to Seller in that the entire purchase price is financed by the assumption credit, the reinstatement credit, and the binder credit.

2. **Closing Costs.** Seller shall pay the Assumption Fee of StanCorp in the amount of $1000.00. Purchaser shall be responsible for the other closing costs including recording fees on recordable documents.

3. **Closing Prorations.** The following items are to be prorated or adjusted (as appropriate) as of the Closing Date, it being understood that for purposes of prorations and adjustments, Purchaser shall be deemed the owner of the Property on the Closing Date and shall receive the benefits and burdens of ownership on and after the Closing Date:

(i) All real estate and other ad valorem, personal property, use and other taxes shall be prorated (employing a 365-day year) between Purchaser and Seller as of closing based upon the most recently available property assessment and based on 100% of the amount payable, regardless of whether any appeal is pending. If such assessment is not available for the year in question, such proration shall be made on the best available information, and taxes shall be reprorated when the amount thereof can be ascertained and the provisions hereof shall survive the Closing and the delivery of Seller's limited warranty deed. If any taxes or assessments against the Property are not paid in full by Seller on or before Closing the same shall be paid at bond closing.

(ii) All such other charges and expenses of the Property.

4. **Closing.** The consummation of the purchase and sale of the Property contemplated under this Agreement (the "Closing") shall be held at a time mutually agreed upon in writing but not later than _____, 2005 (the "Closing Date") by Purchaser and Seller at the offices of Kaufman & Rothfeder, P. C., or such other office designated by Purchaser.

5. **Conveyance of Title.** At Closing, Seller shall convey fee simple title to the Property to Purchaser pursuant to a recordable limited warranty deed, subject only to such exceptions to title

as are set forth on Exhibit "B" attached hereto (the "Permitted Title Exceptions"). Seller will convey marketable title to the Property to Purchaser, insurable (at Purchaser's expense) by a title insurance company under its standard ALTA Owner's Policy of Title Insurance at standard rates, free and clear of all liens (except the assumed mortgages listed in the recitals above), encumbrances, and other exceptions to title, except those which do not materially affect the current use of the property in an adverse manner.

6.   **Damage or Destruction, Condemnation and Code Violations.**

A.   **Damage or Destruction.** If, prior to Closing, the Property, or any part thereof, is damaged or destroyed by any casualty and the Property, or any part thereof, so damaged or destroyed are not repaired or replaced to a condition at least as good as that immediately preceding the damage or destruction (the parties agreeing that the inability of Seller to restore occupancy and revenue to levels reasonably comparable to those existing immediately prior to such casualty shall constitute a condition not as good as that immediately preceding the casualty) by Seller at Seller's expense prior to Closing, then Purchaser shall have the option to (i) if the damage exceeds $100,000.00, terminate this Agreement by giving written notice of such termination to Seller; or (ii) close the transaction contemplated by this Agreement according to the terms hereof without reduction in the Purchase Price, in which event at the Closing Seller shall (x) allow as a credit against the Purchase Price a sum equal to any insurance proceeds previously paid to Seller on account of such damage or destruction which have not been applied to the restoration of the Property, or any part thereof, prior to Closing and (y) assign to Purchaser all of Seller's rights to receive the proceeds of any insurance policy otherwise payable to and not previously paid to Seller on account of such damage or destruction. If the damage is less than $100,000.00, then Seller may elect not to repair such damage or destruction, but instead may pay over to Purchaser at Closing all insurance proceeds which it has received in connection with such damage or destruction and/or assign to Purchaser at Closing all of Seller's rights, title and interest to any insurance proceeds not then received by Seller and pay to Purchaser the amount of any deductible involved with such damage or destruction and, in such event, Purchaser shall close hereunder with no reduction in the Purchaser Price. Purchaser shall exercise its election provided in this Section by giving Seller written notice of Purchaser's election within ten (10) days after receipt of the notice of damage or destruction. If Purchaser fails to timely elect to terminate as provided in this Section, Purchaser shall be deemed to have elected to close as provided in this Section. If Purchaser timely elects to terminate, then all other rights and obligations of the parties under this Agreement shall terminate.

B.   **Condemnation.** If, prior to Closing, the Property or any portion thereof which, in the judgment of Purchaser, would have a material adverse effect on the operation of the Property as an assisted living facility, is taken, or subject to being taken, under pending condemnation, eminent domain or similar governmental confiscatory proceedings, Purchaser, at its sole option, by notice to Seller within ten (10) days following the date on which Purchaser has actual knowledge of such occurrence, may elect to terminate this Agreement, in which event all other rights and obligations of the parties under this Agreement shall be terminated. If Purchaser elects not to terminate this Agreement, the transaction contemplated herein shall be closed in accordance with the terms hereof

and Seller shall pay to Purchaser the amount of any proceeds it has received pursuant to such condemnation or eminent domain and assign to Purchaser any rights to future proceeds related thereto.

7. **Deliveries at Closing.**

    A. **By Seller.** At Closing, and subject to the terms, conditions and provisions hereof and the performance by Purchaser of its obligations as set forth herein, Seller shall deliver possession of the Property to Purchaser and shall deliver or cause to be delivered to Purchaser, at Seller's sole cost and expense, and in addition to the other documents provided for herein, each of the following items:

        (i) A limited warranty deed duly executed and acknowledged by Seller, and in form for recording, conveying fee simple title in the Land and Improvements to Purchaser, subject only to the Permitted Title Exceptions;

        (ii) All keys to all locks on the Property (to the extent that such are available and are not already in Purchaser's possession) and an accounting for keys in possession of others and all on-site books and records pertaining to the Property;

        (iii) An owner's affidavit reasonably acceptable to Purchaser's title insurance company sufficient to remove any exception to title for mechanics' and materialman's liens, broker's liens, or other liens (including without limitation water and sewer, if applicable) and parties in possession;

        (iv) Such documents as are required by StanCorp and the other mortgage holders to evidence the assumption thereof; and

        (v) a lease from Purchaser as landlord to Seller as tenant at no less than $15 per foot with a term of at least one (1) year longer than the loan maturity date of the first mortgage.

    B. **By Purchaser:** At Closing, and subject to the terms, conditions and provisions hereof and the performance by Seller of its obligations as set forth herein, Purchaser shall deliver or cause to be delivered to Seller, at Purchaser's sole cost and expense, and in addition to the other documents provided for herein, each of the following items:

        (i) The balance of the Purchase Price or closing costs, if any.

        (ii) Such other documents including Assumption Agreement as may be required by this Agreement, all in form satisfactory to Purchaser, Seller and Title Company, if applicable.

        (iii) a lease from Purchaser as landlord to Seller as tenant at no less than $15 per foot with a term of at least one (1) year longer than the loan maturity date of the first mortgage.

(iv) Such documents as are required by StanCorp and the other mortgage holders to evidence the assumption thereof.

8. **Representations, Warranties and Covenants**.

A. **Of Seller**: Seller represents, warrants and covenants to Purchaser that:

(i) Seller (i) has complete and full authority to execute this Agreement and to convey to Purchaser title to the Property in accordance with Paragraph 5 of this Agreement and (ii) will execute and deliver such other documents, instruments, agreements, including but not limited to affidavits and certificates necessary to effectuate the transaction contemplated herein.

(ii) Seller will not further sell, encumber, convey, assign or contract to sell, convey, assign, pledge, encumber or lease (except for resident leases for terms not to exceed twelve (12) months entered into in the ordinary course of business and at market rates) all or any part of the Property, nor restrict the use of all or any part of the Property at any time between the Effective Date and (i) Closing, or (ii) the earlier termination of this Agreement pursuant to its terms. Seller additionally hereby represents and warrants that no rights-of-first refusal or similar agreements exist in connection with the Property which would in any way interfere with Purchaser's ability to purchase the Property as provided herein.

(iii) Seller is not a "foreign person" as that term is defined in the I.R.C., Section 1445 (F) (3), nor is the sale of the Property subject to any withholding requirements imposed by the Internal Revenue Code, including, but not limited to, Section 1445 thereof.

(iv) To Seller's knowledge, (i) the Property has not in the past been used and is not presently being used for the handling, storage, manufacturing, refining, transportation or disposal of "toxic material", "hazardous substances" or "hazardous waste" other than small quantities ordinarily used in the operation and maintenance of an assisted living facility; and (ii) there are no buried, semi-buried or otherwise placed tanks, storage vessels, drums or containers of any kind located on the Property used for the storage of hazardous waste, hazardous substances or toxic material. The terms "hazardous waste", "hazardous substances" and toxic material" include, without limitation, any flammable explosives, radioactive materials, hazardous materials, hazardous wastes, hazardous or toxic substances or related materials defined in the Comprehensive Environmental Response Compensation, and Liability Acct of 1980, as amended (42 U.S.C. Sect. 960 et seq.), the Hazardous Materials Transportation Act, as amended (42 U.S.C. Sect. 1801 et seq.), the Resource Conservation and Recovery Act, as amended (42 U.S.C. Sect 9601 et seq.), the regulations adopted and publications promulgated pursuant to the foregoing and any other federal, state or local environmental law, ordinance, rule or regulation. Furthermore, Seller has not received a summons, citation, directive, letter or other communication, written or oral, from any governmental authority as to any of the above environmental concerns.

(v) That the representations and warranties contained in this Section 8 shall be true and correct as of the date hereof and as of the Closing Date and such representations and warranties and the covenants of Seller contained in this Section 8 shall survive Closing and continue in full force and effect for six (6) months following Closing notwithstanding such Closing and consummation of the sale and purchase contracted for herein. In order for Purchaser to make a claim against Seller for breach of any of the representations, warranties and covenants contained herein, Purchaser shall provide Seller with written notice of same prior to the expiration of said six (6) month period. The obligation of Purchaser to close this transaction is expressly conditioned upon said representations and warranties being true and correct on the Closing Date in material respects; and, if requested by Purchaser, Seller shall recertify at Closing as to the continued validity of the representations, warranties and covenants set forth herein. A breach by Seller of any warranty or representation made by Seller in any material respect or a breach of any covenant made by Seller shall be deemed a default on the part of Seller.

Notwithstanding the provisions of this Paragraph 8 (A), it is expressly acknowledged and agreed that if Purchaser shall actually discover prior to Closing that any of the representations set forth in this Paragraph 8 (A) were untrue when made, or have become untrue prior to the Closing, then, if Purchaser shall proceed with the consummation of the purchase and sale of the Property pursuant to this Agreement, Purchaser shall be deemed to have waived any claim of breach that Purchaser may have against Seller with respect to any such representation set forth herein.

B. **Of Purchaser**: Purchaser represents, warrants and covenants to Seller that:

(i) Purchaser has obtained all requisite authorizations, has the capacity and full power to enter into and carry out this Agreement and the transactions contemplated hereby and will execute and deliver such other documents, instruments and agreements necessary to effectuate the transaction contemplated herein.

(ii) There is no suit, action or arbitration, or legal, administrative or other proceeding or governmental investigation, formal or informal, pending or to Purchaser's knowledge threatened which materially and adversely affects Purchaser's ability to perform hereunder.

9. **Notices**. All notices, requests, demands or other communications hereunder shall be in writing and deemed given when delivered personally or by recognized overnight courier delivery service such as Federal Express, when telefaxed or on the day said communication is deposited in the U.S. mail, by registered or certified mail, return receipt requested, postage prepaid, addressed as follows:

If to Seller:       Goff Group, Inc.
                    80 Technacenter Drive
                    Montgomery, AL 36117

With a copy to:

If to Purchaser:   John W. Goff
                   80 Technacenter Drive
                   Montgomery, AL 36117

With a copy to:    George W. Thomas
                   Kaufman & Rothfeder, P. C.
                   P. O. Box 4540
                   Montgomery, AL 36103

or to such other address as the parties may from time to time designate by notice in writing to the other parties.

    10. **Amendment.** Neither this Agreement nor any provision hereof may be changed, amended, modified, waived or discharged orally or by any course of dealing, but only by an instrument in writing signed by the party against which enforcement of the change, amendment, modification, waiver or discharge is sought.

    11. **Applicable Law.** This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Alabama.

    12. **Waiver.** Failure of either Purchaser or Seller to exercise any right given hereunder or to insist upon strict compliance with regard to any term, condition or covenant specified herein, shall not constitute a waiver of Purchaser's or Seller's right to exercise such right or to demand strict compliance with any term, condition or covenant under this Agreement.

    13. **Counterparts.** This Agreement may be executed in several counterparts, each of which may be deemed an original, and all of such counterparts together shall constitute one and the same Agreement. This Agreement shall not be recorded and any party recording this Agreement or a memorandum thereof shall be in default hereunder.

    14. **Captions.** All captions, headings, paragraph and subparagraph numbers and letters are solely for reference purposes and shall not be deemed to be supplementing, limiting, or otherwise varying the text of this Agreement.

    15. **Severability.** The invalidity or enforceability of a particular provision of this Agreement shall not affect the other provisions hereof, and this Agreement shall be construed in all respects as if such invalid or unenforceable provision were omitted.

16. **Entire Agreement.** This Agreement constitutes the sole and entire agreement of the parties and is binding upon Seller and Purchaser, their heirs, successors, legal representatives and assigns.

17. **Assignment.** Purchaser may freely transfer and assign this Agreement. Purchaser shall notify Seller in writing in the event of such transfer and assignment. Seller shall not transfer or assign its interest hereunder without the prior written consent of Purchaser, which may be withheld by Purchaser in its sole discretion.

18. **Indemnity.** Seller hereby agrees to indemnify and hold Purchaser harmless for and against any and all losses, damages, costs, expenses, liabilities, obligations and claims of any kind (including, without limitation, reasonable attorneys fees and other legal costs and expenses) which Purchaser may at any time suffer or incur, or become subject to, as a result of or in connection with:

(i) any material breach or inaccuracy of any of the representations or warranties made by Seller in or pursuant to this Agreement or any material failure by Seller to carry out, perform or satisfy any of its covenants, agreements or obligations under or pursuant to this Agreement; or

(ii) the operation of the Property prior to the Closing Date.

19. **Effective Date of Agreement.** In the event this Agreement is not signed simultaneously by both parties, the "Effective Date" of this Agreement shall be the date upon which the last party accepts and executes the Agreement.

[SIGNATURES ON NEXT PAGE]

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized officers or representatives, under seal, as of the Effective Date set forth in the preceding paragraph.

Seller:

GOFF GROUP, INC.,
an Alabama corporation

By: _____
Its: _____

Date of Execution: Jan. ____, 2005

Purchaser:

By: _____
        JOHN W. GOFF

Date of Execution: Jan. ____, 2005

S:\Client-Matters\5254\2016\AssumptionsalePSA version 2 wpd.wpd  10

Exhibit "A"

Legal Description of the Property

[to be attached]

S:\Client-Matters\5254\2016\AssumptionsalePSA version 2 wpd.wpd

## Exhibit "B"

### Permitted Title Exceptions

1. Taxes and assessments for the year 2005, and subsequent years.

2. [Add any other permitted title exceptions here]

S:\Client-Matters\5254\2016\AssumptionsalePSA version 2 wpd.wpd